Matter of Headley v Annucci (2022 NY Slip Op 03166)

Matter of Headley v Annucci

2022 NY Slip Op 03166

Decided on May 12, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 12, 2022

533649
[*1]In the Matter of Jashib Headley, Petitioner,
v
Anthony J. Annucci, as Acting Commissioner of Corrections and Community Supervision, Respondent.

Calendar Date:April 15, 2022

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Ceresia, JJ.

Jashib Headley, Auburn, petitioner pro se.
Letitia James, Attorney General, Albany (Kathleen M. Treasure of counsel), for respondent.

Ceresia, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent finding petitioner guilty of violating a prison disciplinary rule.
Following an investigation, petitioner was identified as being an active participant and leader in an unauthorized meeting in the correctional facility's east yard on May 29, 2020 for the purpose of planning and providing direction to other incarcerated individuals not to go to the recreation yards or use phones or kiosks as part of a demonstration that took place on June 1, 2020. As a result, petitioner was charged in a misbehavior report with urging others to participate in a demonstration. Following a tier III disciplinary hearing, petitioner was found guilty of that charge. That determination was affirmed upon administrative appeal, and this CPLR article 78 proceeding ensued.
We confirm. The misbehavior report, testimony at the hearing and confidential information considered in camera by the Hearing Officer provide substantial evidence to support the determination of guilt (see Matter of Rosario v Annucci, 127 AD3d 1477, 1478 [2015]; Matter of Encarnacion v Ricks, 289 AD2d 625, 626 [2001], lv denied 97 NY2d 613 [2002]). To the extent that petitioner challenges the Hearing Officer's assessment of the confidential information, we find that the Hearing Officer's questioning of the investigating sergeant who gathered such confidential information was sufficiently thorough and specific to allow the Hearing Officer to assesses the reliability and credibility of the confidential information provided (see Matter of Williams v Fischer, 18 NY3d 888, 890 [2012]; Matter of Carbuccia v Venettozzi, 194 AD3d 1179, 1180 [2021]). Any conflict in the testimony presented at the hearing, including petitioner's denial that he engaged in the alleged conduct, presented a credibility issue for the Hearing Officer to resolve (see Matter of Carbuccia v Venettozzi, 194 AD3d at 1180; Matter of Bekka v Annucci, 168 AD3d 1334, 1335 [2019]).
Turning to petitioner's procedural challenges, we are unpersuaded by petitioner's contention that the misbehavior report did not provide adequate notice of the charge. The misbehavior report provided the date, place, approximate time, description of the conduct alleged and rule violation, which sufficiently provided him notice of the alleged conduct and charge against him so that he could prepare a defense (see Matter of Bekka v Annucci, 168 AD3d at 1335; Matter of Brooks v Fischer, 92 AD3d 987, 988 [2012]; Matter of Fareedullah v Fischer, 64 AD3d 1024, 1025 [2009], lv denied 13 NY3d 713 [2009]).
We also reject petitioner's contention that he was improperly denied "to/froms" of the incident that he requested, given that the requested material did not exist (see Matter of Drake v Annucci, 178 AD3d 1189, 1190 [2019]; Matter of Mullins v Annucci, 177 AD3d 1061, 1061 [2019]). As for petitioner's argument [*2]that he was not provided with a May 29, 2020 video of the yard, the record reflects that this video was unavailable — not as a result of any bad faith but, rather, because the ordinary retention period had expired (see Matter of Cliff v Selsky, 293 AD2d 885, 885 [2002]; Matter of Harris v Selsky, 236 AD2d 723, 724 [1997]). "In any event, the unavailability of the videotape was not detrimental since the correction officer[] who observed the incident first hand [testified and was] subject to []examination" by petitioner (Matter of Harris v Selsky, 236 AD2d at 724).
Egan Jr., J.P., Clark and Pritzker, JJ., concur.
Lynch, J. (dissenting).
I agree with the majority's assessment of the issues, except with respect to the May 29, 2020 videotape. The misbehavior report asserted that petitioner was "an active participant in an unauthorized meeting in E-yard on [May 29, 2020]" and that a demonstration ensued on June 1, 2020. That report was prepared on June 17, 2020 and served on petitioner the next day. On June 19, 2020, petitioner requested that his employee assistant obtain a copy of the May 29, 2020 video footage.
The hearing commenced on June 24, 2020 and was continued on July 29, 2020, at which time witness testimony was taken from the sergeant who prepared the misbehavior report. When petitioner raised a question as to whether the sergeant had reviewed the May 29th video, the Hearing Officer explained that the video had been requested but was "unavailable." The sergeant then responded that he had "looked at the videos." When petitioner asked if she could clarify, the Hearing Officer responded as follows: "No, I can't, when I make a request, they are just told to me whether or not they are available or unavailable. I don't get details on this." When asked how many people were at the "unauthorized meeting" on May 29th, the sergeant responded "approximately twelve" with some "leaving." Later during the hearing, petitioner repeated his request for the May 29th video, pointing out the sergeant's testimony. The Hearing Officer explained, "[a]nd that has been told to me, we've passed the retention time [the video] is unavailable."
When the hearing continued on August 19, 2020, petitioner again requested the May 29th video. The Hearing Officer noted that she had "the form that said it was unavailable." She further noted that she did not know whether the sergeant "reviewed [the video] before the retention deadline and since that time because don't forget there was a three-week delay between the 29th [a]nd the misbehavior report."
From this sequence, we know that petitioner made a timely request for the May 29th video but was not provided a copy. The sergeant confirmed that he reviewed the video and actually testified that the unauthorized meeting on May 29th involved 12 people. It is evident that the Hearing Officer was informed that the video was unavailable but was not provided with a specific explanation other than that the retention [*3]time had elapsed. The Hearing Officer ultimately concluded that the video was not necessary because another correction officer testified that he was present in E-yard on May 29, 2020 and observed petitioner in a large gathering "by the bleachers over by the basketball court" with "approximately 30 to 40 [incarcerated individuals]." And therein is the rub.
The sergeant and the correction officer have described two distinctly different meetings, one involving 12 people, the other 30 to 40 (compare Matter of Harris v Selsky, 236 AD2d 723, 724 [1997]). This discrepancy heightens the relevance of the May 29th video, as does the fact that the sergeant viewed the video and the Hearing Officer was uncertain whether that viewing occurred before or after the undefined retention period expired. Complicating matters, the Hearing Officer noted the three-week delay between the May 29th meeting and issuance and service of the misbehavior report on petitioner.
This record reflects uncertainty as to the failure to retain and produce the May 29th video (see Matter of Espinal v Annucci, 175 AD3d 1696, 1697 [2019]; compare Matter of Espinal v Coughlin, 153 AD2d 778, 778 [1989], appeal dismissed 74 NY2d 944 [1989], lv denied 75 NY2d 705 [1990]). In a situation such as this, where there is an extended delay in issuing a misbehavior report and the author of that report has in fact reviewed a video, it is incumbent upon the correctional facility to preserve that evidence (see Matter of Anselmo v Annucci, 176 AD3d 1283, 1287-1288 [2019] [Garry, P.J., concurring in part and dissenting in part]). The failure to do so here compromised petitioner's due process right to a fair evidentiary hearing (see generally Wolff v McDonnell, 418 US 539, 566 [1974]; Matter of Cortorreal v Annucci, 28 NY3d 54, 58 [2016]; Matter of Laureano v Kuhlman, 75 NY2d 141, 146 [1990]). That is particularly so in view of the sergeant's affirmative testimony as to what ostensibly happened in the E-yard on May 29, 2020. It is further evident that the Hearing Officer should have, but failed to, inquire further as to the existence of the video or the circumstances of its deletion (see Matter of Espinal v Annucci, 175 AD3d at 1697; Matter of Anselmo v Annucci, 176 AD3d at 1287-1288 [Garry, P.J., concurring in part and dissenting in part]). Under these circumstances, the determination should be annulled and the charge dismissed.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.